**HAZELTINE CORPORATION v. RADIO CORPORATION OF AMERICA et al.**
**RADIO CORPORATION OF AMERICA et al. v. HAZELTINE CORPORATION et al.**

Nos. 6795, 6801.

United States Court of Appeals for the District of Columbia.

Decided July 26, 1937.

Clarence M. Fisher, of Washington, D. C., and R. Morton Adams and Baldwin Guild, both of New York City, for appellant in No. 6795.

Richard A. Ford, of Washington, D. C. and Stephen H. Philbin, of New York City, for appellants in No. 6801.

Clarence M. Fisher, of Washington, D. C., R. Morton Adams, of New York City, Joseph W. Milburn, of Washington, D. C., and Lawrence K. Sager and Baldwin Guild, both of New York City, for appellees in No. 6801.

Richard A. Ford and Joseph W. Milburn, both of Washington, D. C., and Lawrence K. Sager and Stephen H. Philbin, both of New York City, for appellees in No. 6795.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

These appeals are taken from decisions of the United States District Court for the District of Columbia and relate substantially to the same issues. The cases were tried together in the lower court and will be so considered here.

In suit No. 6795 the Hazeltine Corporation filed a bill in equity in the District Court under the provisions of section 4915 Rev.St., as amended (35 U.S.C.A. § 63), seeking to determine its priority as assignee of Carl E. Trube as to a certain invention, and to have the court authorize the Com-missioner of Patents to issue a patent to petitioner therefor.

In appeal No. 6801, which is a related suit concerning the same subject-matter, the Radio Corporation of America, as assignee of Walter Van B. Roberts, filed a similar bill to determine its right as such assignee to receive a patent for the same invention.

The suits arise out of two related interferences, to wit, Nos. 56064 and 56065, which were concurrently conducted in the Patent Office.

Interference No. 56064 involved the parties Sidney Y. White, Hazeltine Corporation, assignee of Carl E. Trube, and the Research Products Corporation, assignee of Joseph J. Daley.

Interference No. 56065 involved the foregoing parties together with the Radio Corporation of America, as assignee of Walter Van B. Roberts.

The applicant Carl E. Trube on March 11, 1930, after having assigned his claim to the Hazeltine Corporation, was accidentally killed while engaged in scientific research, and was not examined as a witness in this case.

At the outset of the trial in the District Court the Research Products Corporation and Joseph J. Daley by leave of court and without objection of the parties withdrew their suits and counterclaims without prejudice.

The applications of the remaining parties were filed in the following order: White Application, August 8, 1925; Trube Application, April 14, 1926; Roberts Application, September 2, 1926.

The invention in issue has to do with electrical circuits called "coupling systems" and relates particularly to their application to receiving sets of radio broadcasting signals.

The invention as involved in Interference No. 56065 has been briefly described as "a method and means for transferring electrical energy from an exciting circuit to a tunable absorbing circuit. In order to provide an energy transfer which is substantially constant over a range of frequencies to which the tunable absorbing circuit is resonant, an energy transfer net work is provided which transfers energy both electromagnetically and electrostatically. It being a characteristic of an electromagnetic transfer means to transfer an increased amount of energy at the high frequencies,

526

and a characteristic of an electrostatic transfer means to transfer a decreasing amount of energy at the higher frequencies, the invention here involved constitutes a combination of these two types of energy transfer means into a single energy transfer unit coupled and proportioned to effect a substantially uniform transfer of energy throughout the frequency range of said tunable absorbing circuit."

The invention as involved in Interference No. 56064 differs from the above in that it requires the energy transfer to be in a "predetermined manner"; whereas in No. 56065 it is required that the energy transfer be in a "substantially constant" manner.

The issue in Interference No. 56064 is expressed in four counts which read as follows:

"1. The method of transferring electrical energy throughout a range of frequencies from an exciting circuit to a tunable absorbing circuit, which consists of transferring the energy both electromagnetically and electrostatically in aiding phase, and causing said electrostatic transfer to vary in a predetermined manner as said absorbing circuit is tuned.

"2. The method of transferring electrical energy throughout a range of frequencies from an exciting circuit to an absorbing circuit whose constants include a capacitive reactance divided into two portions, which consists of transferring energy in aiding phase both electromagnetically and across one of said capacitive portions, adjusting said absorbing circuit for resonance with desired current frequencies in said exciting circuit by varying the other of said capacitive portions, and adjusting the relative values of said capacitive portions to produce an energy transfer that combines with the electromagnetic energy transfer to produce a combined transfer that varies in a predetermined manner with frequency.

"3. An electrical system including an exciting circuit and a tunable absorbing circuit, an electrostatic coupling between said circuits adapted to decrease in a predetermined way with increase of frequency as said absorbing circuit is tuned and an electromagnetic coupling between said circuits so poled as to transfer energy in phase with said electrostatic coupling.

"4. An electrical system including an exciting circuit and a tunable absorbing circuit, an electrostatic coupling between said circuits adapted to decrease in a predeter-

mined way with increase of frequency as said absorbing circuit is tuned, an electromagnetic coupling between said circuits so poled as to transfer energy in phase with said electrostatic coupling, and a condenser in said exciting circuit in series with said couplings."

The issue in Interference No. 56065 is expressed in three counts which read as follows:

"1. The method of transferring electrical energy throughout a range of frequencies from an exciting circuit to a tunable absorbing circuit, which consists of transferring the energy both electromagnetically and electrostatically in aiding phase, and causing said electrostatic energy transfer to decrease as said absorbing circuit is tuned in such sense as to increase the frequency of the energy so selected for transfer in substantially the same degree as the electromagnetic energy transfer increases through such tuning.

"2. In an electrical system means for transferring energy throughout a range of frequencies from an exciting circuit to a tunable absorbing circuit including a coupling between said circuits comprising in combination a capacitive reactance element, and an inductive reactance element, poled to transfer energy in aiding phase, the reactions of said elements being adjusted to produce a combined reaction which remains substantially constant with frequency variations as said absorbing circuit is tuned.

"3. An electrical system including an exciting circuit and a tunable absorbing circuit, an electrostatic coupling between said circuits, and an electromagnetic coupling between said circuits, said couplings being so poled and relatively adjusted that for such adjustment their combined energy transfer remain substantially constant with frequency as said absorbing circuit is variably tuned."

It is conceded by all parties that each of the applications discloses the subject-matter of the claims in suit.

White, the senior party, took no testimony and relied solely upon his date of filing, to wit, August 8, 1925, for conception and reduction to practice.

In Interference No. 56064 the Hazeltine Corporation and Daley took testimony in relation to conception and reduction to practice. The Examiner of Interferences held upon the record that in March, 1925, a date prior to White's filing date, Trube

was shown to have constructed and successfully operated a receiver substantially like that shown by Trube Exhibit 32 (called the "new" TF6 Thermiodyne receiver) with a circuit substantially as shown by Trube Exhibit 61; that the counts of the interference were all supported by Trube Exhibit 32; and that inasmuch as Trube had thereby shown conception and reduction to practice of the invention in issue prior to White's record date Trube must prevail. Therefore priority of invention of the subject-matter in issue in Interference No. 56064 was awarded by the Examiner to Trube, the junior party.

Upon appeal by White and Daley from the foregoing decision of the Examiner in Interference No. 56064 awarding priority to Trube, the Board of Appeals of the Patent Office, after setting out a copy of the four counts of the Interference, held that when considering Interference No. 56065 involving the same invention and the same parties and an additional party, Roberts, they had reached the conclusion that Daley, Roberts, and Trube had failed to overcome White's filing date, and that White was accordingly entitled to an award of priority. The Board held that the counts of Interference No. 56065 required that the transfer of energy be "substantially constant" as well as that the electrostatic branch of the system be adjusted to transfer energy in a "predetermined manner"; that it is disclosed in the specifications of each party that the energy may be transferred in a definite predetermined manner and each party discloses transferring it in a substantially constant manner, but that it was not proven that Trube had conceived the limitation of transferring energy in a "substantially constant" manner throughout the wave band in his model, the "new" TF6 Thermiodyne, Trube Exhibit 32, on which he must rely if he is to overcome White's filing date; that while a "predetermined" manner of the counts of Interference No. 56064 is broader than the "substantially constant" manner of Interference No. 56065, it is still considered limited to an intentional choice of one of the various manners, either constant, increasing, decreasing, or definitely variable. The Board held that it is not shown that Trube had any predetermined or preconceived intention in this particular respect when that set was produced and operated.

The Board accordingly held upon the appeal in Interference No. 56064 that Trube and Daley had failed to overcome White's filing date either as to conception or reduction to practice and accordingly reversed the decision of the Examiner therein and awarded priority to White, the senior party.

In Interference No. 56065 in which the Radio Corporation of America, as assignee of Roberts, is an additional party, the Examiner of Interferences held that Trube had failed to show either conception or reduction to practice of the invention prior to White's record date.

The Examiner, however, held that the couplings should be so poled and relatively adjusted that for such adjustment their combined energy transfer remain "substantially constant" with frequency as said absorbing circuit is variably tuned, whereas the testimony fails to show that the circuit was "substantially constant" within the counts in issue and therefore that neither the radio receiver Exhibit 32 nor any radio receiver made under the teachings of Trube had been shown to embody the invention in issue. Wherefore priority of the invention in issue was awarded to White the senior party.

As to the claim of Roberts the Examiner held upon the evidence that the claim was entirely uncorroborated as to the making of any of the exhibits alleged to have been made prior to White's record date.

Upon appeal of Interference No. 56065 the Board of Appeals held against the claim of Roberts upon the ground that his mere diagramatic sketching of a circuit could not be received as a reduction to practice and that Roberts had failed to show either conception or reduction to practice since these elements were not corroborated by evidence.

The Board held that Trube's record clearly established that the "new" TF6 Thermiodyne of which Trube's Exhibit 32 is a representative was produced, as held by the Examiner, not later than March 1925. The Board, however, further held that Trube had failed to prove an essential feature of the counts, namely, that of having the electrostatic and electromagnetic couplings so relatively adjusted that for such adjustment their combined energy transfer remains substantially constant with frequency as the absorbing circuit is variably tuned.

The Board therefore held that Trube's record failed to establish conception or reduction to practice of the special require-

ments of the counts of Interference No. 56065, and that inasmuch as the parties Daley and Roberts had likewise failed to establish either conception or reduction to practice of the details of the count before White's filing date, White must prevail. The decision of the Examiner of Interferences was therefore affirmed and priority awarded by the Board of Appeals in both interferences to White the senior party.

Afterwards, on February 16, 1933, Hazeltine Corporation, as plaintiff, filed its bill in equity in the present case against White, Radio Corporation of America, and the Research Products Corporation as defendants, setting out the claim of the plaintiff as assignee of Carl. E. Trube, deceased, to be the first, original, and sole inventor of the subject matter of the aforesaid interferences and therefore entitled to receive letters patent for them. Plaintiff prayed for such relief. These claims were denied by defendants White, the Radio Corporation of America and Daley who each in turn prayed that the letters patent be issued to them.

The cases were tried upon both the oral and written testimony submitted to the Examiner of Interferences and the Board of Appeals in the Patent Office, and upon other testimony introduced at the trial, and upon consideration thereof the court held among other things as follows:

"Hazeltine Exhibit 32, a 'new' Thermiodyne receiver, was not proved to have been made prior to White's filing date and no evidence of value was introduced at the trial over that introduced in the Patent Office proceedings to prove that it was made prior to White's filing date. * * *

"The 'new' TF6 Thermiodyne sets, Hazeltine Exs. 32 and 44, do not have either the 'substantially constant' or the 'predetermined manner' energy transfer of the counts in interference. In Ex. 44, the energy transfer was not constant, but departed therefrom in three stages by 90%, 57.6% and 51.5%. These departures were due to the effects of regeneration, resistance and coupling in the circuits. * * *

"The Hazeltine Corporation has failed to produce any new evidence over that presented in the Patent Office proceedings which gives any basis for not following the decisions of the Board of Appeals of the Patent Office, or any evidence sufficient in character to carry conviction that the Patent Office decisions were erroneous."

The court accordingly dismissed the bill of Research Products Corporation and the bill and counterclaims of the Radio Corporation of America and the bill of complaint of Hazeltine Corporation and its counterclaims and awarded and declared that in each case White was entitled to receive a patent for his invention defined in the Patent Office Interferences Nos. 56064 and 56065.

Whereupon the present appeal to this court was taken by the Hazeltine Corporation, as assignee of Carl E. Trube, and the Radio Corporation of America, as assignee of Walter Van B. Roberts.

We agree with the lower court in its decision denying the claim of priority presented by the Radio Corporation of America, as assignee of Roberts, for the reasons set out in that court's opinion.

We are, however, compelled to disagree with the decision of the lower court in respect of the Hazeltine Corporation, as assignee of Trube. In our opinion it appears from the record to be conclusively established that the "new" TF6 Thermiodyne radio receiver, including Exhibits 32 and 44, were manufactured, sold, and used in large quantities in the spring of 1925 and that these receivers contained compound inter-tube electrical systems incorporating the electrical circuit of the claims.

In Interference No. 56065 the Examiner of Interferences said: "There is an abundance of evidence, comprising documentary exhibits, physical exhibits, and oral testimony which is deemed to show that the 'New' TF-6 Thermiodyne receiver made under the teachings of Trube, was constructed, and successfully operated by the Thermiodyne Radio Corporation not later than March of 1925 * * * and that the circuit thereof was essentially that disclosed by Trube Exhibit 61 and embraced in Trube Exhibit 32. As this is apparently not seriously questioned it is deemed unnecessary to discuss the evidence in support thereof in detail."

In support of this statement the Examiner cited the testimony of the witnesses Dustin, Mompere, Merrifield, Palmer, and Stauffer.

The Board of Appeals of the Patent Office in its decision said: "We think Trube's record clearly establishes that the new TF-6 Thermiodyne of which Trube Exhibit No. 32 is a representative, was produced as held

by the Examiner, not later than March, 1925."

It appears that Trube was a graduate of Stevens Institute of Technology; that he became engaged in radio developments of his own invention; that in the spring of 1924 the witness Mompere was seeking a radio receiver to exploit; that he met Trube at the latter's home and discussed with him a radio development prior to the compound coupling circuit; that Trube proposed a design which would be commercially available, and accordingly there was formed a company known as the Shepard-Potter Company (later changed to the Thermiodyne Radio Corporation). A plant was purchased at Plattsburg, N. Y., and manufacturing operations commenced. The first type of receiver produced, known as the "original" TF6 Thermiodyne, was succeeded by the "modified" TF6 Thermiodyne and finally by the "new" TF 6 which is relied upon for Trube's priority in the present case.

The formation and history of the Shepard-Potter Company succeeded by the Thermiodyne Radio Corporation, together with Trube's development by March 1925 of the "new" TF6 Thermiodyne, incorporating the coupling system in issue and its subsequent commercial exploitation, is contained in the testimony of the former Thermiodyne Corporation employees Mompere, Palmer, Dustin, McDonough, and Wiser. The testimony of the witness Phelps, who was a new witness in the present case, is also directly applicable.

Phelps testified that in March, 1925 he went to the Thermiodyne offices in New York and met Trube; that Trube drew and explained the operation of his new compound coupling circuit and drew a plan of it which Phelps had not preserved but reproduced from memory as Exhibit 85 of the record; that Trube drew a second sketch and by way of illustration of what he had actually accomplished in physically embodying the circuit under discussion he drew Phelps' attention to a radio receiver which Phelps identified as corresponding in circuit and construction with the "new" TF6 Thermiodyne Exhibit 32 in this case. The testimony of which this is but a brief outline proves to a conviction that the receiver upon which Trube's claim depends was manufactured, disclosed and reduced to practice prior to the filing date of White.

We are also of the opinion that according to the record "energy transfer" as used in the counts means "mutual reactance," which we believe to have been proven as "substantially constant" in the Trube invention. It is also clear from the record that the Trube receiver discloses that the energy transfer was "predetermined" and accordingly responded to the counts in issue.

We are confirmed in this conclusion by the history of other litigation relating to the present issues.

In Interference No. 62451, Trube v. White, relating to electric coupling systems, decided by the Examiner of Interferences on August 1, 1931, involving the same issue as is involved in the present case, together with others not involved herein, it was held by the Examiner after an exhaustive discussion of the question, that Trube was entitled to a date for reduction to practice of any invention embodied in the "new" TF6 Thermiodyne receiver prior to White's record date and specially to a reduction to practice of any invention embodied in Trube Exhibits 32 and 44 prior to that date and that Trube's invention responded to counts essentially similar to those of the present issue. Wherefore priority of invention over White upon counts 1, 2, 6, 7, and 10 of that interference was awarded to Trube. Upon appeal the Board of Appeals held that the dates of production of Trube's sets were at or prior to March, 1925, and that the testimony established the fact that Trube had conception of producing the "predetermined action—substantially constant" transfer of energy, equally applicable to a single stage of radio frequency amplification as to that of the entire receiver, and that this was before White's record date. The Board therefore affirmed the decision of the Examiner of Interferences.

The case was appealed by White to the United States Court of Customs and Patent Appeals, which, after a full examination of the subject, affirmed the decision of the Board of Appeals. White v. Trube (Cust. & Pat.App.) 84 F.(2d) 216.

It is argued by appellee that the trial court refused to admit the record of the case just cited as evidence in the present case, but the court at the same time stated: "I am not convinced that it has a place in the evidence here, but certainly there can be no objection to resorting to that in argument."

It is further argued that at the time of the hearing of the interference now referred to and of the opinion of the Court of Customs and Patent Appeals, the party White was not interested in the litigation,

having sold his entire interest to the Radio Corporation of America. It nevertheless appears that the appellant's case was presented by counsel and that the case was fully considered by the court. Moreover, the case is not cited as res judicata, but as presenting that Court's views upon the questions involved in that case as well as in this.

It is also contended by appellee that the case involved in the former interference differed from that at present before the court. It appears, however, that whereas there were points of difference the issues as above set out were related and similar to those presented to the court in the present appeal.

Upon an examination of the record therefore we find that the testimony in character and amount carries thorough conviction of the conclusion that Trube is entitled to priority of invention over White's record date.

The decree of the lower court in this respect is reversed, and the cause is remanded, with instructions to authorize the Commissioner of Patents to award a patent to Hazeltine Corporation as assignee of Trube upon the claims above stated.

Affirmed in part. Reversed in part and remanded.